# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## CASE NO. 25-11887

---

COURTNEY MORGAN, M.D.,
*Plaintiff-Appellant/Cross-Appellee*

v.

WALGREEN CO.,
*Defendant-Appellee/Cross-Appellant*.

---

On Appeal from the
U.S. District Court of the Southern District of Florida
District Court Docket No. 0:24-cv-61442-RS

---

## PLAINTIFF-APPELLANT/CROSS-APPELLEE
## COURTNEY MORGAN, M.D.'S OPENING BRIEF

---

Andrew L. Schlafly, Esq.
LAW OFFICE OF ANDREW L. SCHLAFLY
939 Old Chester Road
Far Hills, NJ 07931
Tel: (908) 719-8608
Fax: (908) 934-9207
Email: aschlafly@aol.com

Erica Chaplin, Esq.
ANDERSON & WELCH, LLC
500 S. Australian Ave., 6th Flr
West Palm Beach, FL 33401
Tel: (561) 832-3386
Fax: (561) 820-4867
Email: chaplinlaw@gmail.com
andewelch@andersonandwelch.com

*Counsel for Plaintiff-Appellant/Cross-Appellee, Courtney Morgan, M.D.*

***Courtney Morgan, M.D. v. Walgreen Co.***
<u>**Case No. 25-11887**</u>

**CERTIFICATE OF INTERESTED PERSONS**
**AND**
<u>**CORPORATE DISCLOSURE STATEMENT**</u>

Plaintiff-Appellant/Cross-Appellee, COURTNEY MORGAN, M.D., respectfully submits the following list, which includes the trial judge, and all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this review:

1.  The Honorable Rodney Smith, *U.S. District Court Judge*

***Plaintiff-Appellant/Cross-Appellee***

2.  Courtney Morgan, M.D., *Plaintiff-Appellant/Cross-Appellee*

***Counsel for Plaintiff-Appellant/Cross-Appellee***

3.  Anderson & Welch, LLC, *Attorneys for Plaintiff-Appellant/Cross-Appellee*
4.  Anderson, Esq., Kevin R., *Attorney for Plaintiff-Appellant/Cross-Appellee*
5.  Chaplin, Esq., Erica, *Attorney for Plaintiff-Appellant/Cross-Appellee*
6.  Schlafly, Esq., Andrew L., *Attorney for Plaintiff-Appellant/Cross-Appellee*

***Defendant-Appellee/Cross-Appellant***

7.  Walgreens Co. (WAG), *Defendant-Appellee/Cross-Appellant*

***Counsel for Defendant-Appellee/Cross-Appellant***

8.  *Akerman, LLP, *Attorneys for Defendant-Appellee/Cross-Appellant*
9.  Daniel, W. Aaron, Esq., *Attorney for Defendant-Appellee/Cross-Appellant*
10. Kula & Associates, P.A., *Attorneys for Defendant-Appellee/Cross-Appellant*

11. Kula, Esq., Elliot B., *Attorney for Defendant-Appellee/Cross-Appellant*

12. *Malvin, Tamara S., Esq., *Attorney for Defendant-Appellee/Cross-Appellant*

13. Quintairos Prieto Wood & Boyer, PA, *Attorneys for Defendant-Appellee/Cross-Appellant*

14. Tarlow, Esq., David Michael, *Attorney for Defendant-Appellee/Cross-Appellant*

**Other Interested Parties**

15. Florida Board of Medicine

16. Florida Board of Pharmacy

17. Florida Department of Health

18. Walgreens Boots Alliance (Defendant-Appellee/Cross-Appellant's Parent Company)

*\* - no longer involved in representation*

Pursuant to Federal Rule of Appellate Procedures 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, I hereby certify that there are no publicly traded corporations, stock, equities, debts or corporate disclosures for Plaintiff-Appellant/Cross-Appellee, Courtney Morgan, M.D.

/s/ Andrew L. Schlafly
Andrew L. Schlafly, Esq.

/s/ Erica Chaplin
Erica Chaplin, Esq.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant Courtney Morgan respectfully requests oral argument. The lower court's dismissal was based upon the alleged necessity of joining the State of Florida under Rule 12(b)(7) and Rule 19. Plaintiff contends that the State is not a required party under Rule 19 because claims challenging a private party's violations of Florida law and administrative rules do not require Florida's joinder, particularly where the State is amenable to suit in federal court under appropriate circumstances, as demonstrated in Plaintiff's proposed *Second Amended Complaint*. The underlying issue is not whether an individual Walgreens pharmacist has discretion to honor or reject a prescription, but whether the corporate Defendant-Appellee Walgreens may contractually or unilaterally exempt itself from complying with mandatory legal obligations governing pharmacy conduct under Florida statutes and pharmacy rules. This case raises important public policy considerations regarding the enforceability of state health and pharmacy laws, as well as a provider's access to legal redress when a pharmacy claims contractual immunity from regulatory compliance. Walgreens maintains it would be substantially prejudiced if the laws were enforced against it. Plaintiff Morgan maintains that no entity may insulate itself from liability by asserting that following the law would cause prejudice. Oral argument would assist the Court in addressing any questions related to the application of Rule 19 and the obligations of private actors to comply with public law.

# TABLE OF CONTENTS

Page(s)

Certificate of Interested Persons and Corporate Disclosure Statement ................. C1

Statement Regarding Oral Argument ........................................................... i

Table of Contents ................................................................................... ii

Table of Citations .................................................................................. iv

Jurisdictional Statement ........................................................................... 1

Statement of Issues ................................................................................. 2

Statement of the Case .............................................................................. 3

    A. Course of Proceedings and Disposition Below ..................................... 5
      1. Temporary and Preliminary Injunction (TRO) ................................. 5
      2. Motion to Dismiss ...................................................................... 6
      3. Appeal of Order Granting Preliminary Injunction
        (Case No. 24-13087) ................................................................. 9

    B. Statement of Facts ....................................................................... 10

    C. Statement of the Standard of Review ................................................ 16

Summary of the Argument ....................................................................... 17

Argument ............................................................................................. 18

I.    The District Court Erred by Holding that the State of Florida is an
    Indispensable Party, when Dr. Morgan's Name is Not Mentioned in the
    Settlement Agreement between Florida and Walgreens, Florida has
    Never Sought to Intervene Below, and a Similar Lawsuit Commenced
    and Concluded without Florida as a Party .............................................. 18

    A. Florida Is Not a Necessary Party to a Private, Individualized
      Challenge of Walgreens' Prescription-Blocking Policy. ......................... 20

1. Florida's Settlement Creates No Rights or Duties Concerning Dr. Morgan and Provides No Basis for Joinder .................................20

2. Walgreens' Prescription Block Is a Self-Created, Self-Implemented, Self-Regulated, Liability-Driven Discretionary Corporate System ..............................................................21

3. Public Health Is Safeguarded Through Pharmacist Judgment Under Florida Law, Not Through Walgreens' Self-Imposed Protocol..............................................................................23

4. Florida's Non-Participation in This and Similar Litigation Confirms Its Interests Are Not Implicated ..........................................23

B. The District Court Erred in Concluding That Joinder of Florida Would Destroy Federal Jurisdiction ..........................................................24

II.   The District Court Erred in Holding that Dr. Morgan Waived Subject Matter Jurisdiction; Forfeiture Doctrine Does Not Apply.............................26

III.  It Was an Abuse of Discretion for the District Court to Deny Dr. Morgan's Motion for Leave to Amend to Assert a Federal Claim against Florida and Walgreens, after the District Court Found the State of Florida to be a Necessary Party. ....................................................29

IV.   The District Court Improperly Considered and Relied on Excerpts of the Settlement Agreement that Were Incomplete, Unauthenticated, and Not Central to Plaintiff's Claims when Determining that the State of Florida is an Indispensable Party. ..................................................31

Conclusion  ..........................................................................................35

Certificate of Compliance ....................................................................37

iii

# TABLE OF CITATIONS

Page(s)

## Cases

*Abele v. Sawyer,*
    750 So. 2d 70 (Fla. 4th DCA 1999)..................................................24

*Aldar Tobacco Grp., LLC v. Am. Cigarette Co. Inc.*,
    2009 WL 10682051, at *1 n.1 (S.D. Fla. June 18, 2009) ...........................31

*Ambrosia Coal & Constr. Co. v. Pages Morales,*
    368 F.3d 1320 (11th Cir. 2004) ..................................................29

*Arbaugh v. Y & H Corp*.,
    126 S. Ct. 1235 (2006)............................................................26

*Auto-Owners Ins. Co. v. Morris*,
    191 F. Supp. 3d 1302, 1304 (N.D. Ala. 2016) ...........................................34

*Bassett v. Mashantucket Pequot Tribe*,
    204 F.3d 343 (2d Cir. 2000) ..................................................... 19, 26

*BOF Med. Ctr., Inc. v. CVS Pharmacy, Inc.,*
    No. 23-CV-24438, 2024 WL 1908616 (S.D. Fla. Apr. 30, 2024) ......... 23, 24

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.,*
    116 F.3d 1364 (11th Cir. 1997)....................................................34

*California v. Arizona*,
    440 U.S. 59, 62 n.3 (1979) ........................................................19

*Cardwell v. Auburn Univ. Montgomery,*
    941 F. Supp. 2d 1322 (M.D. Ala. 2013)................................................ 27, 28

*Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.,*
    669 F.2d 667 (11th Cir. 1982).....................................................20

*Chicago Tribune Co. v. Bridgestone/Firestone, Inc.,*
    263 F.3d 1304 (11th Cir. 2001)....................................................16

iv

*Colorado River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976) ............................................................. 2, 17, 29

*Morgan v. Walgreen Co.*,
    No. 24-13087, 2025 WL 2691080, at *1
    (11th Cir. July 1, 2025) ......................................................................9

*Dussouy v. Gulf Coast Inv. Corp.*,
    660 F.2d 594 (5th Cir. 1981) ........................................................30

*Ex parte Young*,
    28 S. Ct. 441 (1908) ................................................................ 24, 25

*Fisher v. PNC Bank, N.A.*,
    2 F.4th 1352 (11th Cir. 2021)........................................................29

*Focus on the Family v. Pinellas Suncoast Transit Auth.*,
    344 F.3d 1263, 1280 (11th Cir. 2003) .................................... 19, 20

*Franks v. Bowers*,
    116 So. 3d 1240 (Fla. 2013) ..........................................................33

*Furr v. T.D. Bank, N.A.*,
    587 B.R. 743 (S.D. Fla. 2018) ......................................................30

*Gables Ins. Recovery, Inc. v. Citizens Prop. Ins. Corp.*,
    261 So. 3d 613 (Fla. 2018) ...........................................................33

*Gessa v. Manor Care of Fla., Inc.*,
    86 So. 3d 484 (Fla. 2011) .............................................................33

*Harris v. Gonzalez*,
    789 So. 2d 405 (Fla. 4th DCA 2001) ...........................................33

*Hartford Steam Boiler Inspection & Ins. Co. v. Brickellhouse Condo.*
    *Ass'n, Inc.*, No. 16-CV-22236, 2016 WL 5661636
    (S.D. Fla. Sept. 30, 2016) ...................................................... 27, 28

*Horsley v. Feldt*,
    304 F.3d 1125 (11th Cir. 2002) ....................................................34

*In re Trusted Net Media Holdings, LLC*,
    550 F.3d 1035 (11th Cir. 2008) ....................................................26

*Jackson v. City of Atlanta, Georgia*,
    97 F.4th 1343 (11th Cir. 2024) ....................................................34

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
    299 F.3d 1242, 1246 (11th Cir. 2002) .........................................16

*Jones v. Bank of Am., N.A.*,
    564 F. App'x 432 (11th Cir. 2014) ...............................................27

*Klay v. United Healthgroup, Inc.*,
    376 F.3d 1092 (11th Cir. 2004) ............................................ 16, 26

*Molinos Valle Del Cibao, C. por A. v. Lama*,
    633 F.3d 1330 (11th Cir. 2011) ............................................ 19, 26

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*,
    522 F.3d 1211, 1216 (11th Cir. 2008) .........................................16

*Nat'l Ass'n of the Deaf v. Florida*,
    980 F.3d 763 (11th Cir. 2020) .....................................................25

*Quiller v. Barclays Am./Credit, Inc.*,
    727 F.2d 1067 (11th Cir. 1984),
    on reh'g, 764 F.2d 1400 (11th Cir. 1985) ....................................24

*Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Comm'ns, Inc.*,
    376 F.3d 1065 (11th Cir. 2004) ...................................................30

*Thomas v. Town of Davie*,
    847 F.2d 771 (11th Cir. 1988) .............................................. 16, 30

*United States v. Philidor*,
    717 F.3d 883 (11th Cir. 2013) .....................................................16

*Univ. of S. Ala. v. Am. Tobacco Co.*,
    168 F.3d 405 (11th Cir. 1999) .....................................................27

vi

*Vanover v. NCO Fin. Servs., Inc.*,
      857 F.3d 833 (11th Cir. 2017) ......................................................16

*Will v. Michigan Dep't of State Police*,
      109 S. Ct. 2304 (1989) ...............................................................25

*Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*,
      746 F.3d 1008 (11th Cir. 2014) ..................................................16

*Wymbs v. Republican State Executive Comm.*,
      719 F.2d 1072 (11th Cir. 1983) .............................................. 19, 26

**Federal Statutes**

28 U.S.C. § 1291 ..............................................................................1

28 U.S.C. § 1292(a)(1) ...................................................................1, 9

28 U.S.C. § 1332(a) ..........................................................................1

42 U.S.C. § 1983 ................................................................8, 26, 28

**Florida Statutes (2024)**

Fla. Stat. § 465.003(13)....................................................................32

Fla. Stat. § 465.003(22) .....................................................................7

Fla. Stat. § 465.0266 ......................................................................7, 32

**Florida Regulations**

Fla. Admin. Code R. 64B16-27.831 .............................................. 13, 32

**Federal Rules of Appellate Procedure**

Fᴇᴅ. R. Aᴘᴘ. P. 4(a)(4)(A)(iv) ...........................................................1

**Federal Rules of Civil Procedure**

Fᴇᴅ. R. Cɪᴠ. P. 12(b)(6) ..............................................................3, 6, 31

Fᴇᴅ. R. Cɪᴠ. P. 12(b)(7) ..............................................3, 4, 6, 8, 16, 31, 34

FED. R. CIV. P. 13(g) ................................................................28

FED. R. CIV. P. 15(a) ................................................................30

FED. R. CIV. P. 15(a)(2) ...........................................................28

FED. R. CIV. P. 19 ...............................................6, 9, 18, 19, 28, 36

FED. R. CIV. P. 19(a) ......................................................18, 19, 20

FED. R. CIV. P. 19(b) ...............................................3, 19, 20, 25, 36

FED. R. CIV. P. 59(e) ...............................................1, 8, 16, 29, 30

FED. R. CIV. P. 60(b) ...............................................................30

**Other Sources**

§ 3522 Courts of Limited Jurisdiction,

    13 Fed. Prac. & Proc. Juris. § 3522 (3d ed.)...................................29

## JURISDICTIONAL STATEMENT

The United States District Court for the Southern District of Florida had subject matter jurisdiction under 28 U.S.C. § 1332(a) because this is a civil action between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff–Appellant Dr. Courtney Morgan ("Dr. Morgan") is a citizen of Florida, and Defendant–Appellee Walgreen Co. ("Walgreens") is an Illinois corporation with its principal place of business in Illinois.

The district court entered a final order dismissing the case on February 20, 2025 (Doc 69), and denied Plaintiff's timely filed Rule 59(e) motion for reconsideration on May 5, 2025 (Doc 73). Plaintiff filed a timely notice of appeal on June 3, 2025 (Doc 74), within 30 days of the entry of the order disposing of the Rule 59(e) motion, as required by Federal Rule of Appellate Procedure 4(a)(4)(A)(iv).

This Court has appellate jurisdiction pursuant to 28 U.S.C. §1291, which confers jurisdiction over appeals from final decisions of the district courts. This appeal is from a final order that disposed of all parties' claims.

1

**STATEMENT OF ISSUES**

1.     Whether the district court erred by holding that the State of Florida is an indispensable party to this challenge to Walgreens' blanket refusal to fill Dr. Morgan's prescriptions, where he was not privy to the settlement agreement between Florida and Walgreens; Florida never sought to intervene below as a party; and a similar lawsuit commenced and concluded without Florida as a named party.

2.     Whether the district court erred when it held that Dr. Morgan had waived subject matter jurisdiction by not arguing that it would exist if Florida were added as a party, when neither the lack of, nor existence of, subject matter jurisdiction can be inadvertently waived by a party because of "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), and forfeiture doctrine does not apply.

3.     Whether the district court abused its discretion in denying Dr. Morgan's motion for reconsideration seeking leave to amend to assert federal claims against Florida and Walgreens after the district court found Florida to be a necessary party.

4.     Whether the district court erred by relying on incomplete, unauthenticated, and irrelevant settlement agreement excerpts cited by Walgreens to conclude that the State of Florida is an indispensable party.

## STATEMENT OF THE CASE

This case arises from a single state law claim brought by Dr. Courtney Morgan, a licensed Florida physician, who alleged that Walgreens Co. ("Walgreens") wrongfully interfered with his medical practice. (Doc 4, Pg 1, 21-24) Dr. Morgan has been practicing medicine for over 20 years. (Doc 4, Pg 2) He holds unrestricted medical and DEA prescribing licenses. (*Id.*) He is the sole owner of the Hop Medical Services, PLLC ("Hop Medical"), a pain management clinic ("PMC") that received its PMC license on July 2, 2020. (Doc 4, Pg 2-3) Dr. Morgan's clinic has passed all mandatory annual random Florida Department of Health (DOH) audits and inspections for PMCs. (Doc 4, Pg 8-9) Despite these facts, Walgreens initiated a corporate block of all of Dr. Morgan's prescriptions for controlled substances in its central pharmacy system, in violation of Florida laws and administrative rules. (Doc 4, Pg 10-13) Dr. Morgan seeks damages for tortious interference with business relationships and injunctive relief to prevent continued interference. (Doc 4, Pg 24, 28-29)

The district court granted Dr. Morgan's motion for preliminary injunctive relief after an evidentiary hearing. (Doc 14) Thereafter, Walgreens moved to dismiss under Rule 12(b)(6) and (7), raising several arguments including failure to join the State of Florida as an indispensable party. (Doc 50, Pg 1-2) For this argument, Walgreens relied heavily on a general Settlement Agreement between the company

3

and the State of Florida. The agreement was not attached to Plaintiff's complaint. (Doc 50, Pg 6-8) The district court found that the Settlement Agreement could be considered under Rule 12(b)(7) for purposes of assessing issues related to failure to join an indispensable party. (Doc 69, Pg 6-7) Walgreens argued it acted pursuant to, and in compliance with, the Settlement Agreement. (Doc 50, Pg 19) Dr. Morgan argued that a contract cannot supersede Walgreens' requirement to follow the law by not interfering with the Pharmacy Board's established standard of practice, whereby licensed pharmacists are obligated to exercise their individual professional judgment when filling prescriptions. (Doc 61, Pg 5, 11, 16)

The district court found that the State of Florida was an indispensable party under Fed. R. Civ. P. Rule 19(b). (Doc 69, Pg 10) It reasoned that its interpretation of the Settlement Agreement was necessary in deciding whether Walgreens actions were unjustified, and any such interpretation exercised by the Court could affect the rights and obligations of the parties to the agreement and substantially prejudice the state's interests. (*Id.*) The district court granted Walgreens' Motion to Dismiss without addressing the other grounds for dismissal raised, and denied Dr. Morgan the opportunity to amend his complaint as an alternative relief. (Doc 69, Pg 6, 12) This appeal follows the district court's final order granting Walgreens' Motion to Dismiss and denying Dr. Morgan's Motion for Reconsideration. (Doc 69, 73, 74) Dr. Morgan now seeks review and reversal of those rulings.

4

## A. Course of Proceedings and Disposition Below.

On August 7, 2024, Dr. Morgan filed his *Verified Complaint* with a single state claim against Walgreens for Tortious Interference with Business and also seeking Injunctive Relief. (Doc 1) On August 8, 2024, Plaintiff filed his *First Amended Verified Complaint* against Defendant Walgreens with the same claim and request for Injunctive Relief. (Doc 4) This complaint included attached exhibits to support the allegations, specifically the DOH's inspection results for Dr. Morgan's clinic, correspondence between Walgreens and Dr. Morgan, and correspondence from Walgreens to Dr. Morgan's patients. (Doc 4 and 4-1) The correspondence, in part, informed both Dr. Morgan and his patients that as of August 16, 2024, Walgreens would no longer accept any of Dr. Morgan's controlled substance prescriptions and that this was a corporate decision, where "[l]ocal pharmacy team members were not involved" and "had no role" in making this decision; and the local pharmacists "cannot make exceptions" to this decision. (Doc 4-1, Pg 8, 13, 17, 19)

### 1. <u>Temporary and Preliminary Injunction (TRO)</u>

On August 13, 2024, Dr. Morgan filed an *Expedited Motion for Temporary Restraining Order and Preliminary Injunction* to prevent Walgreens' scheduled block of his prescriptions from taking effect on August 16th. (Doc 10; Doc 10-1 – 10-7). A hearing was held on August 15, 2024, where both parties were present. (Doc 11) The district court granted Dr. Morgan's motion for a temporary restraining order,

pending briefing and hearing on the preliminary injunction. (Doc 14, Pg 6) On August 22, 2024, the preliminary injunction hearing was held. (Doc 25, Pg 1) Walgreens never provided any reasons for its decision to block Dr. Morgan's prescriptions in its brief or during the hearing. After presentation of testimonial evidence by Dr. Morgan and two of his patients, the district court granted the preliminary injunction. (Doc 25, Pg 3-10) Walgreens filed its notice of interlocutory appeal of this decision to this Court on September 20, 2024. (Doc 29)

## 2. <u>Motion to Dismiss</u>

On October 16, 2024, Walgreens filed a *Motion to Dismiss Plaintiff's First Amended Complaint*, arguing that Dr. Morgan failed to state a claim for tortious interference under Rule 12(b)(6) and (b)(7), and that the State of Florida was a necessary party under Rule 19 due to Walgreens' obligations under a prior settlement with the state. (Doc 50, Pg 1, 13-17) Walgreens also argued that joinder of the State of Florida would divest the district court of its jurisdiction. (Doc 50, Pg 14-15) Walgreens also alleged that Dr. Morgan needed to exhaust administrative remedies with the Florida Board of Pharmacy before pursuing this action. (Doc 50, Pg 12-13)

On November 6, 2024, Dr. Morgan filed his opposition to the motion, challenging Walgreens' reliance on the general Settlement Agreement as an extrinsic document neither attached to, nor referenced in the operative complaint and not properly before the court at the motion to dismiss stage. (Doc 61, 9-10) The

Settlement Agreement did not include Dr. Morgan and also did not require a blanket exclusion for filling his controlled-substance prescriptions. Interpretation of the Settlement Agreement was not essential to the claims asserted. (Doc 19-1, Pg 8-17; Doc 50, Pg 6-8; Doc 61, Pg 9-10) Dr. Morgan argued that the Settlement Agreement did not immunize Walgreens from liability for instituting an indiscriminate, blanket corporate block on all of his controlled substance prescriptions, as this conduct violated Florida laws and administrative rules. (Doc 61, Pg 10-11, 15-16) Judicial notice was requested of the referenced laws and rules, in part, including the below (Doc 61, at Pg 6):

    i.    **Fla. Stat. 465.003(22)** (Definition of 'Practice of the profession of pharmacy'): "This subsection ***may not be interpreted to permit an alteration of the prescriber's directions, the diagnosis or treatment of any disease,*** the initiation of any drug therapy, ***the practice of medicine**,* or the practice of osteopathic medicine…" *(emphasis added)*

    ii.    **Fla. Stat. 465.0266:** "Any pharmacist dispensing a prescription *has at all times* the right and *obligation to exercise his or her independent professional judgment*." *(emphasis added)*

Dr. Morgan also directed the district court's attention to the provision in the referenced Settlement Agreement that addressed the pharmacy's compliance with the law, to wit (Doc 61, Pg 11):

    "[n]othing in the Settlement Terms shall be construed as relieving the Settling Pharmacy of the obligation of retail pharmacies to comply with all federal and Florida state and local laws, nor shall any provision of the Settlement Terms be deemed as permission for the Settling Pharmacy to engage in any acts or practices prohibited by such laws."

Consequently, Dr. Morgan maintained that Walgreens' interpretation of the settlement agreement could not override Florida laws or administrative rules requiring pharmacists to exercise independent professional judgment when dispensing medications. (*Id.*)

Walgreens alone is accused of the wrongful conduct, and the relief sought is Walgreens' compliance with the law. (Doc 61, 11, 16-17) The State of Florida is neither a necessary nor indispensable party under Rule 19, as no relief was sought against the State. The State of Florida's absence would not impair its interests or subject Walgreens to inconsistent obligations. (*Id.*)

Additionally, Dr. Morgan finally argued that administrative exhaustion was inapplicable, as his claims arise from the conduct of corporate Walgreens, an unlicensed entity that cannot be regulated or subjected to the jurisdiction of Florida's Board of Pharmacy. (Doc 61, Pg 5-7) There is no remedy to exhaust in the administrative arena before presenting this civil claim. (*Id.*)

On February 19, 2025, the district court granted Walgreens' motion to dismiss under Rule 12(b)(7), stating that proceeding without Florida would risk inconsistent obligations for Walgreens and result in prejudice to the State. (Doc 69, Pg 10) On March 20, 2025, Dr. Morgan filed his Motion for Reconsideration pursuant to Rule 59(e), requesting reconsideration of leave to amend his complaint, submitting a proposed *Second Amended Complaint* that added two claims under 42 U.S.C. §1983

against the State of Florida, seeking declaratory and injunctive relief. (Doc 70 and 70-1) Walgreens opposed the motion, maintaining the position that joinder of the State of Florida would be futile due to sovereign immunity. (Doc 71, Pg 10) On August 28, 2025, the district court denied reconsideration, reaffirming its Rule 19 analysis concluding that an amendment would be futile. (Doc 71, Pg 3)

On July 3, 2025, Dr. Morgan filed his notice appealing the district court's orders granting dismissal of the complaint and denying reconsideration of leave to amend. (Doc 74)

### 3. Appeal of Order Granting Preliminary Injunction (Case No. 24-13087)

On December 23, 2024, Walgreens filed its initial Appellant Brief. (Case No. 24-13087, DE 16) On February 20, 2024, Dr. Morgan filed his Appellee Answer Brief. (DE 24) Walgreens did not file a Reply Brief, but instead moved to stay the proceedings after the district court's Order Granting Walgreens' Motion to Dismiss. (DE 28) After denial of Dr. Morgan's Motion for Reconsideration, on May 23, 2025, Walgreens moved to voluntarily dismiss its appeal as moot. (Doc 73; DE 33, Pg 5-6) On June 2, 2025, Dr. Morgan filed his opposition to same, arguing that dismissal would improperly allow the district court to thwart appellate review of its own injunction order. (DE 34, Pg 4) He emphasized that the appeal remained viable under binding Eleventh Circuit precedent, which holds that an interlocutory appeal under 28 U.S.C. § 1292(a)(1) is not mooted merely because the injunction's basis may no

longer exist, particularly where no judgment on the merits has occurred. (*Id.*, at 4-8)

On July 1, 2025, the Court granted the motion for voluntary dismissal. (DE 35)

## B. Statement of Facts

The Plaintiff, Dr. Morgan, is a Florida licensed physician who has operated his medical practice, Hop Medical Services, PLLC, ("Hop") since 2006. (Doc 4, Pg 2) He holds unrestricted, active Florida medical and DEA licenses authorizing him to prescribe controlled substances in compliance with state and federal regulations. (Doc 4, Pg 3) In 2020, Hop obtained a pain management clinic ("PMC") license, issued by the Florida Department of Health ("DOH"). (*Id.*) Dr. Morgan is qualified to own, operate, and prescribe controlled substances in Florida pain management clinics. (*Id.*)

Dr. Morgan's practice consists of patients suffering from chronic pain. (*Id.*) The clinic's patients are generally referred from other health care providers (PCPs, specialists, hospitalists, etc.) who recommend continued management/continuity of care for chronic pain. (*Id.*) These patients have comorbidities,[1] such as cancer, HIV, sickle cell disease, congestive heart failure, epilepsy, diabetic neuropathy, COPD, vertebral degenerative disease (with bulging/herniated discs, fusion, compression, bone spurs, facet narrowing, central canal narrowing), amputees, rheumatoid

---

[1] Patients possessing two or more diseases or medical conditions concurrently.

arthritis, arterial vasculitis with peripheral vascular disease of lower extremities, traumatic debilitations (from gunshot wound injuries, crushing from heavy objects in accidents, falls from roof/building/ladder/bridge), motor vehicle accidents, sport injuries, and bone fractures), hypertension, endocrine issues, psychiatric issues, terminal illnesses within the scope of palliative medicine, and other ailments, which are also treated by Dr. Morgan in certain instances. (Doc 4, Pg. 3-4)

Dr. Morgan's practice is designed to guard against diversion and misuse of controlled substances. (Doc 4, Pg 4-8) He established comprehensive compliance protocols which include in part, criminal background checks, treatment agreements, strict no-refill policies, use of the E-Forcse database, and random drug testing. (Doc 4, Pg 7) Medical records are reviewed, patients are examined, and all prescribing is performed in compliance with all laws and regulations. (Doc 4, Pg 7, 12)

The Florida DOH conducts comprehensive random annual inspections and audits of all licensed pain management clinics in Florida.[2] (Doc 4, Pg 8) Dr. Morgan's clinic has always passed the annual FL DOH inspections and audits, with the highest commendations. (Doc 4, Pg 8-9) On May 31, 2024, FL DOH conducted their inspection and audit of Dr. Morgan's clinic, and it found that there was a "clear and complete medical justification for continued treatment [of patients] with

---

[2] Defendant connects the FL DOH audits specifically to Dr. Morgan, as though he is being specially monitored when, in actuality, this is a standard regulatory process performed by the FL DOH on all licensed pain management clinics.

controlled substances." (*Id.*)

Walgreens is a corporate entity located in Illinois, and not a retail pharmacy. (Doc 4, Pg 2) Correspondence was exchanged between Dr. Morgan and Walgreens regarding information Walgreens requested from Dr. Morgan about his medical practice. (Doc 4, Pg 10-11; Doc 4-1, Pg 8-17) Walgreens also sent letters to Dr. Morgan and mailed notices to his patients. (Doc 4-1, Pg 8-19)

The correspondence stated that Walgreens would "discontinue dispensing controlled substances prescribed by [Dr. Morgan] as of August 16, 2024," but the dispensing of prescriptions for non-controlled substances would not be affected, and that Walgreens would "notify [Dr. Morgan's] patients with prescriptions on file" of these decisions. (Doc 4-1, Pg 8, 17) Letters received by patients indeed restated the foregoing, and confirmed that, "**Local pharmacy team members were not involved in the decision and cannot make exceptions.**" (Doc 4-1, Pg 19)

The letter from Walgreens advised Dr. Morgan not to contact "team members at Walgreens pharmacies" because **"[t]eam members at your local pharmacy had no role in making this decision and cannot make exceptions to this decision."** (Doc 4-1, Pg 8, 17) Dr. Morgan could request a review after "one year from [the] block effective date" "if [his] prescribing changes materially." (Doc 4-1, Pg 8)

Walgreens did not provide any explanation for their action. (Doc 4-1, Pg 8-17) This decision violates the very principles of the practice of pharmacy and the

care required for patients who are prescribed controlled substances. (Doc 4, Pg 19)

The Fl. Admin. Code 64B16-27.831 states:

> **"The Board of Pharmacy recognizes that it is important for the patients of the State of Florida to be able to fill valid prescriptions for controlled substances. In filling these prescriptions, the Board does not expect pharmacists to take any specific action beyond exercising sound professional judgment."** (Doc 4, Pg 11)

Pharmacists are required to fill valid prescriptions. The pharmacist's obligation is to exercise sound professional judgment in determining the validity of a prescription. (Doc 4, Pg 11-12) **"A prescription is valid when it is based on a practitioner-patient relationship and when it has been issued for a legitimate medical purpose."** (*Id*.) "Every patient's situation is unique and prescriptions for controlled substances shall be reviewed with each patient's unique situation in mind." (Doc 4, Pg 12) **"When validating a prescription, neither a person nor a licensee shall interfere with the exercise of the pharmacist's independent professional judgment."** (*Id*.) Defendant Walgreens has usurped its own pharmacists' exercise of independent professional judgment in violation of Florida's Board of Pharmacy Rules. (Doc 4, Pg 13)

At no time has any individual pharmacist employed by or affiliated with Walgreens contacted, notified, or otherwise questioned Dr. Morgan regarding the medical necessity and appropriateness of any issued prescriptions for controlled substances. (Doc 4, Pg 12) He was never given any indication that any patient's

prescription was suspected of not being medically necessary, illegitimate, or otherwise problematic. (*Id*.) The prescriptions issued by Dr. Morgan are supported by medical necessity and fully adhere to all applicable state and federal legal guidelines and regulations regarding the prescribing of controlled substances, *as indicated in the Florida Department of Health's May 31, 2024, Inspection Report* (Doc 4-1, Pg 2-6); and, Walgreens has produced nothing to suggest otherwise. (Doc 4, Pg 12)

Dr. Morgan treats over 100 patients who regularly fill their medications at Walgreens locations. (Doc 4, Pg 15, 19, 27) The contents of Walgreens' letter to patients necessarily imply a judgment or conclusion about Dr. Morgan prescribing controlled substances in a manner that is illegitimate, improper, illegal, or otherwise not in keeping with standards of care. This has been damaging to his professional reputation, medical practice and standing in the community. (Doc 4, Pg 15-16; Doc 4-1, Pg 19) Furthermore, patients who are tied to Walgreens will be forced to find other doctors to treat their chronic conditions or another pharmacy. (Doc 4, Pg 14-15) Dr. Morgan's alleged prescribing status with Walgreens is an obstruction for obtaining new patients. (Doc 4, Pg 14) The alleged prescribing status also inherently implies improper prescribing, so pharmacists and medical doctors will likewise have that impression. (Doc 4, Pg 15-17) This block is nationwide for one full year**.** (Doc 4, Pg 10-11, 19-20, 28) If he were to seek employment, no matter the jurisdiction,

his prescribing status with Walgreens would make him unmarketable. (Doc 4, Pg 20, 23, 28)

Most importantly, the actions of Walgreens will jeopardize the health of his patients. (Doc 4, Pg 14-15, 26) Patients who are forced to leave Dr. Morgan's care or continue under his treatment may face serious delays in accessing alternative physicians or pharmacies, placing them at risk of unmanaged pain, withdrawal symptoms, and other foreseeable health complications which may result in emergency care or drive patients to obtain medication outside the supervision of a licensed physician, or otherwise further endangering patient health.[3] (Doc 4, Pg 13-15, 25-26)

Walgreens is one of the largest drug store chains in the United States. (Doc 4, Pg 19, 25) It has a long and sordid history of settlements and judgments against it for its role in the Opioid Epidemic. (Doc 4, Pg 17-18) In 2022, Walgreens also entered into an agreement with the State of Florida to pay $620 million over 18 years. (Doc 4, Pg 17) Walgreens' refusals were not based on legitimate concerns about patient care or regulatory compliance but rather stemmed from corporate anti-opioid initiatives and a desire to reduce scrutiny from regulators by refusing to service physicians prescribing opioids. (Doc 4, Pg 18-19, 25, 27)

---

[3] The Centers for Disease Control and Prevention (CDC) and the Food and Drug Administration (FDA) warn against abrupt discontinuation of opioid medication, which can result in uncontrolled pain or withdrawal symptoms.

C. **Statement of the Standard of Review.**

The Eleventh Circuit reviews a district court's dismissal under Rule 12(b)(7) for failure to join an indispensable party for an abuse of discretion. *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 839 (11th Cir. 2017*); see also Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1039 (11th Cir. 2014). Reversal on appeal is warranted if the district court applies an incorrect legal standard, or applies improper procedures, or relies on clearly erroneous factfinding, or if it reaches a conclusion that is clearly unreasonable or incorrect. *See Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1096 (11th Cir. 2004); *Chicago Tribune Co. v. Bridgestone/ Firestone, Inc.,* 263 F.3d 1304, 1309 (11th Cir. 2001). A finding of fact is "clearly erroneous" when, after reviewing all the evidence, the court is left with the definite and firm conviction that a mistake has been committed. *See United States v. Philidor*, 717 F.3d 883 (11th Cir. 2013).

Review of the district court's application of law is *de novo,* premised on the understanding that application of an improper legal standard is never within a district court's discretion. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.,* 299 F.3d 1242, 1246 (11th Cir. 2002); *see also N. Am. Med. Corp. v. Axiom Worldwide, Inc.,* 522 F.3d 1211, 1216 (11th Cir. 2008). The standard of review for a denial of leave to amend, and for denial of a Rule 59(e) motion, is abuse of discretion. *Thomas v. Farmville Mfg. Co.,* 705 F.2d 1307, 1307 (11th Cir. 1983).

## SUMMARY OF THE ARGUMENT

The district court erred by holding that the State of Florida is an indispensable party to this challenge to Walgreens' blanket refusal to fill Dr. Morgan's prescriptions, when his name is not mentioned anywhere in the Settlement Agreement between Florida and Walgreens, Florida has never sought to intervene below, and a similar lawsuit commenced and concluded without Florida as a party. The Settlement Agreement creates no rights or duties concerning Dr. Morgan, or any basis for joining Florida in this lawsuit. Dr. Morgan has sued because Walgreens refused to fill his prescriptions, and nothing in the Settlement Agreement grants Walgreens the blanket authority to refuse to fill prescriptions by any physician, without due process to that physician.

The district court further erred when it held that Dr. Morgan had waived subject matter jurisdiction by initially not asserting it would exist if Florida became a party, when neither the lack of nor existence of subject matter jurisdiction can be inadvertently waived by a party because of "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), and forfeiture doctrine does not apply. Where, as below, subject matter exists because Dr. Morgan sought to assert federal causes of action against Florida upon its joinder, the district court is jurisdictionally required to accept the lawsuit as amended.

17

It was an abuse of discretion for the district court to deny Dr. Motion's motion for reconsideration, requesting leave to amend to assert a federal claim against Florida and Walgreens, after the district court found the State of Florida to be a necessary party. Dr. Morgan sought leave to amend in a timely manner after the district court surprisingly required adding Florida as a party (which Florida may oppose), and leave to amend should be freely granted under the applicable Federal Rule.

The district court further erred by considering settlement agreement excerpts referenced by Walgreens, which were not authenticated, complete, or relevant to Plaintiff's claims, in its determination that the State of Florida is an indispensable party.

## ARGUMENT

**I.    The District Court Erred by Holding that the State of Florida is an Indispensable Party, when Dr. Morgan's Name is Not Mentioned in the Settlement Agreement between Florida and Walgreens, Florida has Never Sought to Intervene Below, and a Similar Lawsuit Commenced and Concluded without Florida as a Party.**

Federal Rule of Civil Procedure 19 sets forth a two-part analysis for determining indispensability. First, the court must determine whether the absent party is "necessary" under Rule 19(a). A party is considered "necessary" to the action if the court determines either that complete relief cannot be granted with the present parties; or the person's absence may impair or impede their ability to protect

their interest or subject existing parties to a substantial risk of inconsistent obligations. *See Wymbs v. Republican State Executive Comm.*, 719 F.2d 1072, 1079 (11th Cir. 1983); *see also* FED. R. CIV. P. 19(a).

When a party is found "necessary" under Rule 19(a), the court must next determine whether joinder of that party is *feasible* before proceeding to the Rule 19(b) indispensability analysis. Fed. R. Civ. P. 19(b); *see Focus on the Family v. Pinellas Suncoast Transit Auth.,* 344 F.3d 1263, 1280 (11th Cir. 2003). Dismissal is appropriate under Rule 19(b) only when the person "cannot be made a party." *See California v. Arizona*, 440 U.S. 59, 62 n.3 (1979) (When a person described by Rule 19(a) cannot be joined, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable."); *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 358 (2d Cir. 2000) (recognizing that dismissal is proper only where the entity in question "cannot be made a party"); *see also Focus* at 1280 (quoting Fed. R. Civ. P. 19(b)).

If person should be joined but cannot (e.g., because joinder would destroy diversity and divest court of jurisdiction), court must then inquire, applying the factors enumerated in Rule 19(b), whether litigation may continue. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1344 (11th Cir. 2011); *see also Wymbs* at 1079. In determining whether the missing party is a person who should be joined

if feasible, pragmatic concerns, especially the effect on parties to litigation, control. FED. R. CIV. P. 19(a); *see Focus* at 1279-1280; *Challenge Homes, Inc. v. Greater Naples Care Center*, 699 F.2d 677, 669 (11th Cir. 1982); FED. R. CIV. P. 19(b) ("the court must decide, whether in equity and good conscience, the action should proceed among the existing parties or should be dismissed.")

### A. Florida Is Not a Necessary Party to a Private, Individualized Challenge of Walgreens' Prescription-Blocking Policy.

The district court's dismissal rests on the mistaken premise that adjudicating Dr. Morgan's tortious-interference claim would necessarily affect Florida's rights and the obligations of Walgreens under the Florida-Walgreens settlement agreement. (Doc 69, Pg 10) However, the record demonstrates that this case concerns Walgreens' unilateral decision to impose a corporate block on Dr. Morgan's prescriptions, a decision that can be evaluated under Florida law without interpreting, enforcing, or altering the terms of the Florida–Walgreens settlement. (Doc 50, Pg 6–8)

### 1. Florida's Settlement Creates No Rights or Duties Concerning Dr. Morgan and Provides No Basis for Joinder.

The settlement excerpts themselves reveal no connection to Dr. Morgan or his practice. (Doc 19-1, Pg 9-17) Neither the three-page description of the Settlement Agreement nor the excerpts themselves mention Dr. Morgan in any way (Doc 50, Pg 6–8; Doc 19-1, Pg 9-17).

His name, practice, and prescribing activities are entirely absent, showing that the agreement governs only Walgreens' corporate obligations and not the conduct of any individual prescriber. *Id.* This omission makes clear that Florida's settlement with Walgreens creates no rights or duties tied to Dr. Morgan and provides no basis to require Florida's presence in this litigation. The district court even recognized that Dr. Morgan's claims "are not central to, nor do they rely on the terms of the Settlement Agreement," which is "central to Walgreens' defense."

### 2. Walgreens' Prescription Block Is a Self-Created, Self-Implemented, Self-Regulated, Liability-Driven Discretionary Corporate System.

The excerpts Walgreens placed before the court show that the challenged prescription-blocking protocol is a Walgreens' invention, not a State-mandated program. (Doc 50, Pg 7) In the three-page description of the Settlement Agreement, nowhere is the State of Florida identified as a contributor to, or designer of, Walgreens' internal policies. (Doc 50, Pg 6–8) To the contrary, the excerpts repeatedly emphasize Walgreens' own initiative, as acknowledge by Walgreens (*Id.*):

- "*Walgreens* has put in place innovative, comprehensive and industry leading policies, procedures and controls…."
- "…one part of the prescription validation process requires *Walgreens* to 'develop a process….which expressly requires *Walgreens* to review….'"
- "…if *Walgreens* has unresolved 'concerns….'"
- "…*Walgreens* may utilize its 'discretion' …."
- 'the State of Florida's settlement agreement with *Walgreens* that requires and allows *Walgreens* to implement a process…"

21

These statements demonstrate that Walgreens, not the State of Florida, designed and administers the corporate "validation" system whose legality Dr. Morgan challenges. (Doc 50, Pg 7) The excerpts describe a subjective, self-directed process aimed at shielding Walgreens from future liability for unlawful dispensing, not a pharmacy practice regime crafted or guided by Florida regulators. (Doc 50, Pg 6-8; and Doc 4, Pg 17-18, 27) [4] Because the Settlement Agreement merely "allows" Walgreens to implement its own process, and the pleadings contain no allegation that Florida co-designed or approved the policy, Walgreens' internal protocol cannot be recast as a joint state initiative requiring Florida's presence in this case. (Doc. 50, 6-8, 14). This legal action simply tests the validity of the system Walgreens itself created, a corporate prescription-blocking process that Dr. Morgan contends is fundamentally flawed and inconsistent with Florida's laws and rules pertaining to pharmacy. Walgreens' compliance with Florida laws and rules is not a "double, multiple, or otherwise inconsistent obligation," but a duty and requirement under the Settlement Agreement. (Doc 69, Pg 9-10; Doc 19-1, Pg 14)

---

[4] Walgreens does not even identify the Florida Board of Pharmacy as an interested party in this instant appellate case, and there is no indication that the Pharmacy Board provided any guidance in the formation or evaluation of the policies at issue. (DE 4, Pg 2–3).

### 3. Public Health Is Safeguarded Through Pharmacist Judgment Under Florida Law, Not Through Walgreens' Self-Imposed Protocol.

The district court found that the State of Florida's rights and interest under the Settlement Agreement could be impaired by its absence in this litigation. (Doc 69, Pg 10). Walgreens contends that Florida's interest lies in protecting public health and preventing the improper dispensing of controlled substances. (Doc 50, Pg 14) Dr. Morgan argues that Florida's interest in protecting public health is accomplished by enforcement of the very laws that require individual pharmacists to exercise their own professional judgment on each prescription, not by shielding a corporate protocol that overrides those statutory and regulatory duties. (Doc 61, Pg 11, 16)

### 4. Florida's Non-Participation in This and Similar Litigation Confirms Its Interests Are Not Implicated.

Florida has never sought to intervene in this action, underscoring that its rights under the Walgreens settlement are not at stake. This absence is consistent with other recent litigation in which pharmacies subjected to Florida opioid settlements faced private tort claims without the State of Florida's involvement. Dr. Morgan cited to *BOF Medical Center, Inc. v. CVS Pharmacy, Inc.*, as an example of such litigation. *BOF Med. Ctr., Inc. v. CVS Pharmacy, Inc.*, No. 23-CV-24438, 2024 WL 1908616 (S.D. Fla. Apr. 30, 2024). BOF Medical Center is a pain management clinic that pursued a nearly identical tortious-interference claim challenging CVS's block of physician prescriptions for controlled substances. Similarly, CVS asserted "privilege

of interference" in its motion to dismiss to show that their conduct was justified as a matter of law. *See Abele v. Sawyer*, 750 So.2d 70, 75 (Fla. 4th DCA 1999) ("Justification or privilege to interference with a contract is a defense to tortious interference actions.") The district court denied the motion and reasoned that "privilege of interference" was an affirmative defense that could not prevail at the motion to dismiss stage since the affirmative defense did not "clearly appear[ ] on the face of the complaint" as required. *BOF* at *3 (S.D. Fla. Apr. 30, 2024) (citing *Quiller v. Barclays Am./Credit, Inc*., 727 F.2d 1067, 1069 (11th Cir. 1984), *on reh'g*, 764 F.2d 1400 (11th Cir. 1985)).

In *BOF*, although CVS entered into a statewide settlement agreement with Florida, it was not joined in this litigation. The case proceeded through discovery, dispositive motions, and final judgment solely between the private parties. This BOF litigation demonstrates that pharmacy settlement agreements related to statewide opioid litigation does not render the State a necessary party. Walgreens' reliance on its own settlement is therefore a distraction, as this dispute can be fully resolved between Dr. Morgan and Walgreens without affecting Florida's rights or exposing Walgreens to inconsistent obligations.

## B. The District Court Erred in Concluding That Joinder of Florida Would Destroy Federal Jurisdiction.

The mere possibility of adding a state defendant does not automatically defeat subject-matter jurisdiction. Under *Ex parte Young*, 209 U.S. 123 (1908), suits

seeking prospective injunctive relief against state officials for ongoing violations of federal law are not barred by the Eleventh Amendment. *Ex parte Young*, 28 S. Ct. 441 (1908). *see also Nat'l Ass'n of the Deaf v. Florida*, 980 F.3d 763 (11th Cir. 2020) (suits against state and state officials for prospective injunctive relief fall outside Eleventh Amendment immunity).

The district court nevertheless dismissed Dr. Morgan's complaint on the premise that the State of Florida was an indispensable party whose joinder would divest the court of diversity jurisdiction. (Doc 69, Pg 10). Whether or not the court viewed Dr. Morgan as having "waived" this jurisdictional argument, that conclusion is a question of law, not a factual default, and it is legally incorrect because Dr. Morgan could easily assert a federal cause of action against the appropriate Florida official for which subject matter jurisdiction in federal court is undeniable. *See Will v. Michigan Dep't of State Police*, 109 S. Ct. 2304 (1989) (In a 42 U.S.C. §1983 action, the court found that a "[s]uit against state official in his or her official capacity is a suit not against official, but rather against official's office; as such, [the] suit is no different from one against state itself.").

In reaching its dismissal, the district court bypassed the required determination of feasibility of joinder and prematurely proceeded to the indispensability analysis under Rule 19(b), weighing factors of prejudice, adequacy, and alternative remedies (Doc 69, Pg 10–12); *see also* FED. R. CIV. P. 19(b). This

analysis is permitted only after first determining that joinder is not feasible. *See Molinos* at 1344; *Wymbs* at 1079. Dismissal for failure to join an indispensable party is appropriate only where the entity in question cannot be made a party. *See Bassett*, 204 F.3d at 358.

As Dr. Morgan demonstrated in his motion for reconsideration, if the court believed that Florida's participation was necessary, jurisdiction could have been preserved by joining Florida or its appropriate official and asserting a federal claim for injunctive relief under 42 U.S.C. §1983. Therefore, the district court's conclusion that joinder would automatically defeat federal jurisdiction is reversible error. *See Klay*, 376 F.3d at 1096.

Regardless of whether the court characterized Dr. Morgan's silence as waiver or simply bypassed the feasibility inquiry, its conclusion that joinder would automatically defeat jurisdiction is error requiring reversal. *Id.*

## II.    The District Court Erred in Holding that Dr. Morgan Waived Subject Matter Jurisdiction; Forfeiture Doctrine Does Not Apply.

Subject matter jurisdiction involves the court's power to hear a case and therefore can never be forfeited or waived. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006); *In re Trusted Net Media Holdings, LLC*, 550 F.3d 1035 (11th Cir. 2008). Courts have an independent obligation to determine whether subject matter jurisdiction exists, even if no party raises the issue. *Arbaugh* at 514; *In re Trusted* at 1042 (Federal courts must examine their own jurisdiction at

every stage of a case, even if the parties say nothing.); *see also Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

The district court relied on *Jones*, *Hartford*, and *Cardwell* to treat Dr. Morgan's silence on diversity as a binding concession, but those cases can be distinguished. The decisions the district court cited simply apply the ordinary rule that when a party fails to respond to an argument about a claim or defense, the court may treat that point as unopposed.

*Jones* involved a motion for default where the plaintiff failed to respond to the defendant's argument of entitlement to summary judgment. *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014). Accordingly, the court found the claims were abandoned and granted summary judgment. *Id.*

In *Hartford* the relevant issue was whether the *Brillhart Abstention* or the *Colorado River Abstention* standard applies when deciding the exercise of jurisdiction, for the purpose of maintaining factually overlapping cases. *Hartford Steam Boiler Inspection & Ins. Co. v. Brickellhouse Condo. Ass'n, Inc.*, No. 16-CV-22236, 2016 WL 5661636, at *3 (S.D. Fla. Sept. 30, 2016). In response to the defendant's motion to dismiss, the Plaintiff asserted only *that Colorado River Abstention* applies and did not respond to any of the arguments asserted by the Plaintiff under *Brillhart Abstention*. *See id.* at *3. Accordingly, the district court

deemed those arguments abandoned, applied the *Brillhart Abstention* standard, and ultimately abstained from exercising jurisdiction. *Id.* at *3-4.

In *Cardwell*, the defendant moved to dismiss for lack of subject-matter jurisdiction, and the court treated the motion as a facial attack. The plaintiff conceded that the university was not a "person" under Section 1983 but, in her response, requested leave to amend if the complaint was found deficient. Applying Rule 15(a)(2), which directs that "[t]he court should freely give leave when justice so requires," the court granted leave to amend the complaint, as the district court should have done below.

The foregoing cases all involved the analysis of an existing complaint with the claims for the basis of diversity included. None of the foregoing cases involved a Rule 19 analysis or the legal question whether adding a state party would truly destroy jurisdiction, and each court still examined jurisdiction independently.

Walgreens previously indicated its intent to add the State of Florida as a party before the Court's deadline to join additional parties. However, rather than doing so, Walgreens instead improperly used the State of Florida's absence as a basis to seek dismissal of this case, where the responsibility to assert claims against a co-party would fall on Walgreens under FED. R. CIV. P. 13(g), which governs crossclaims. (Doc 70, Pg 5)

28

"The subject matter jurisdiction of the federal courts is too fundamental a concern to be left to the whims and tactical concerns of the litigants." § 3522 Courts of Limited Jurisdiction, 13 Fed. Prac. & Proc. Juris. § 3522 (3d ed.) The federal courts "have a 'virtually unflagging obligation... to exercise the jurisdiction given them.' " *Fisher v. PNC Bank, N.A.*, 2 F.4th 1352, 1356 (11th Cir. 2021) (quoting *Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1328 (11th Cir. 2004) (quoting *Colorado* at 817)) . The district court has an obligation to accept jurisdiction over this dispute, and it was an error of law for the court to refuse to recognize its jurisdiction.

III.    **It Was an Abuse of Discretion for the District Court to Deny Dr. Morgan's Motion for Leave to Amend to Assert a Federal Claim against Florida and Walgreens, after the District Court Found the State of Florida to be a Necessary Party.**

Dr. Morgan twice sought leave to amend, first in his response to Walgreens' motion to dismiss and again in his motion for reconsideration. In its initial order, the district court denied leave without conducting any meaningful assessment of whether adding the State of Florida would actually destroy subject-matter jurisdiction, simply adopting Walgreens' argument that joinder would destroy diversity jurisdiction. When Dr. Morgan moved for reconsideration under Rule 59(e), attaching a proposed Second Amended Complaint to show that jurisdiction would be preserved, the court again denied relief. Citing the Rule 59(e) standards of "new evidence" or "manifest error," the court reasoned that subject-matter

jurisdiction had been "forfeited" because Dr. Morgan did not expressly dispute Walgreens' jurisdictional argument in his original opposition and therefore had not previously raised the issue.

"[A]fter dismissal of an action, the proper procedural course of action for a plaintiff seeking leave to amend is to move for relief under Rule 59(e) or 60(b)." *Furr v. T.D. Bank, N.A.*, 587 B.R. 743, 747 (S.D. Fla. 2018). "A district court's discretion to dismiss a complaint without leave to amend is 'severely restricted' by FED. R. CIV. P. 15(a), which directs that leave to amend 'shall be freely given when justice so requires.'" *Thomas* at 773 (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F. 2d 594, 597 (5th Cir. 1981)) (internal alterations omitted). Rule 15(a)'s "'same standards apply when a plaintiff seeks to amend after judgment of dismissal has been entered by asking the district court to vacate its order of dismissal pursuant to Fed. R. Civ. P. 59(e).'" *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Comm., Inc.*, 376 F.3d 1065, 1077 (11th Cir. 2004) (quoting *Thomas* at 773). "Unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Thomas* at 773 (quoting *Dussouy* at 598) (internal alterations omitted). The district court abused its discretion by denying leave to amend either through an improper procedure by finding indispensability without first determining feasibility, or by applying an incorrect legal standard that ignored

federal-question and injunctive-relief alternatives, both of which are reviewed *de novo* and require reversal.

Finally, in light of how Florida is not a necessary party in the above-referenced similar lawsuit, Dr. Morgan could not reasonably anticipate that a vaguely worded side agreement between Walgreens and Florida, which does not mention Dr. Morgan, speaks only in general terms, and has never even been served on him, would result in requiring Dr. Morgan to add Florida as a party in order to assert his claim against Walgreens.

## IV. The District Court Improperly Considered and Relied on Excerpts of the Settlement Agreement that Were Incomplete, Unauthenticated, and Not Central to Plaintiff's Claims when Determining that the State of Florida is an Indispensable Party.

The district court found that the Settlement Agreement was not central to Dr. Morgan's claim and therefore it determined that the agreement could not be considered under a Rule 12(b)(6) analysis. (Doc 69, Pg 6) However, based on sister circuit courts' precedents, the district court found it could consider extrinsic materials for its analysis under Rule 12(b)(7). (Doc 69, Pg 7) *See Aldar Tobacco Grp., LLC v. Am. Cigarette Co. Inc.*, 2009 WL 10682051, at *1 n.1 (S.D. Fla. June 18, 2009) (The Eleventh Circuit has not articulated a standard for analyzing Rule 12(b)(7) motions, but its sister circuits permit consideration of materials outside the four corners of the complaint.).

31

Dr. Morgan's claims were not central to the Settlement Agreement because the source of his entire grievance is based on Walgreens acting outside of the law and contrary to the pharmacy rules. (Doc 61, Pg 11) Dr. Morgan points to the request for judicial notice in his motion to dismiss response, which mandates the exercise of independent professional judgment by a pharmacist. (Doc 61, Pg 5).

i.    **Fla. Stat. 465.003(13)** (Definition of 'Dispense'): "As an element of dispensing, the an element of dispensing, the pharmacist shall, prior to the actual physical transfer, interpret and assess the prescription order for … she or he deems appropriate ***in the exercise of her of his professional judgment*** ..." (*emphasis added in the prior filing*)

ii.   **Fla. Stat. 465.0266:** "Any pharmacist dispensing a prescription ***has at all times*** the right, ***and obligation to exercise his or her independent professional judgment***." (*emphasis added in the prior filing*)

Dr. Morgan also points to cited rules in his *Amended Complaint* which emphasized the importance of this act by individual pharmacists when dealing with prescriptions for controlled substances, to wit:

32.   **…."The Board of Pharmacy recognizes that it is important for the patients of the State of Florida to be able to fill valid prescriptions for controlled substances. In filling these prescriptions, the Board does not expect pharmacists to take any specific action beyond exercising sound professional judgment."** Florida Administrative Code 64B16-27.831 (*emphasis added in the Amended Complaint*)

33.   Pharmacists are required to fill valid prescriptions. Therefore, the pharmacist's obligation is to exercise sound professional judgment in determining the validity of a prescription. "**A prescription is valid when it is based on a practitioner-patient relationship and when it has been issued for a legitimate medical purpose.**" *Id.* (*emphasis added in the Amended Complaint*)

34.    "Every patient's situation is unique and prescriptions for controlled substances shall be reviewed with each patient's unique situation in mind." *Id.* **"When validating a prescription, neither a person nor a licensee shall interfere with the exercise of the pharmacist's independent professional judgment."** *Id.* (*emphasis added in the Amended Complaint*)

Florida courts have deemed void any agreements that are violative of a provision of a constitution or a valid statute, or any agreement that cannot be performed without violating such a constitutional or statutory provision. *See Gables Insurance Recovery, Inc. v. Citizens Property Insurance Corporation*, 261 So.3d 613 (2018); *Gessa v. Manor Care of Florida, Inc.*, 86 So.3d 484 (2011). This principle underscored that parties cannot circumvent statutory obligations through contractual agreements. The Florida Supreme Court affirmed that a contractual provision that contravenes legislative intent in a way that is "clearly injurious to the public good" violates public policy and is unenforceable. *Franks v. Bowers*, 116 So.3d 1240 (2013); *see also Gessa*, 86 So. 3d at 484 (holding that contract provisions violating statutory protections or public policy, such as liability limits that circumvent nursing home remedies or agreements conflicting with physician-referral statutes, are void and unenforceable); *Harris v. Gonzalez*, 789 So. 2d 405 (Fla. 4th DCA 2001).

Dr. Morgan has not challenged the validly of the Settlement Agreement, but instead emphasized a section of the Walgreens-Florida Settlement Agreement excerpt, which states that:

"[n]othing in the Settlement Terms shall be construed as relieving the Settling Pharmacy of the obligation of its retail pharmacies to comply with all federal and Florida state and local laws, nor shall any of the provisions of the Settlement Terms be deemed as permission for the Settling Pharmacy to engage in any acts or practices prohibited by such laws." (Doc 61, Pg 11; Doc 19-1, Pg 14)

Walgreens cites to the Settlement Agreement, stating its terms are "in addition to, and not in lieu of, any other requirements of federal or Florida state law." (Doc 50, Pg 7) A blanket block of a physician's controlled substance prescriptions that usurps a pharmacist's independent judgment is not in addition to the law, but clearly contrary to the law. Moreover, note that nowhere in Walgreens' defense has it contended that its conduct is in compliance with Florida laws and pharmacy rules.

Even if the ability to review extrinsic materials under Rule 12(b)(7) is permissible, it does not insulate those materials from challenge. The plaintiff may still raise objections regarding any materials the court elects to review. *See Auto-Owners Ins. Co. v. Morris*, 191 F. Supp. 3d 1302, 1304 (N.D. Ala. 2016). Extrinsic materials must be undisputed as a condition for its consideration in motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *see also Jackson v. City of Atlanta, Georgia*, 97 F.4th 1343 (11th Cir. 2024) Evidence is "undisputed" in this context if its authenticity is unchallenged. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

Dr. Morgan did not concede that the referenced settlement agreement was a true and correct copy of the Settlement Agreement. Instead, he identified the

34

materials as "excerpts" which, on their face, as indicated by the pagination at the bottom of the pages, consisted of 5 pages of a 22-page document and 4 pages of a document of an unknown length that was titled "*draft*" (Doc 61, Pg 9; Doc 19-1, Pg 9-17). Plaintiff further explained that the policy described by Walgreens was not the same policy Dr. Morgan was referencing in his *Amended Complaint*, but instead a different policy created in 2013. (Doc 61, Pg 9–10)

Despite having access to the full and final Settlement Agreement, Defendant elected to reference only selected draft excerpts, leaving the district court, and Dr. Morgan, without the complete context that could bear on the rights of the State of Florida or the obligations of Walgreens. Dr. Morgan's challenges to the Settlement Agreement's authenticity and completeness should have prevented the court from relying on those excerpts to conclude that the rights of the State of Florida or the obligations of Walgreens would be affected, especially in light of the basis of his claims being violations of the Florida law and pharmacy rules by Walgreens.

## CONCLUSION

Walgreens' corporate prescription-blocking policy violates Florida law and pharmacy rules by usurping the individual pharmacist's independent judgment, and Dr. Morgan has been directly harmed by this unlawful conduct. Despite Walgreens' clear violations, the district court dismissed the action on the erroneous premise that the State of Florida is an indispensable party, even though the Walgreens–Florida

settlement neither mentions Dr. Morgan, grants Florida any enforceable rights, nor imposes duties that would be affected by adjudicating his tortious-interference claim.

The district court further erred by bypassing the threshold feasibility inquiry required by Rule 19 and prematurely conducting a Rule 19(b) analysis, while incorrectly concluding that joinder would automatically destroy jurisdiction. Subject-matter jurisdiction cannot be waived or forfeited, and Dr. Morgan's proposed amendment asserting a federal claim demonstrated a clear basis for federal jurisdiction that the court was obligated to consider.

The court compounded these errors by denying leave to amend despite Rule 15(a)'s mandate that leave be freely granted. It also relied on incomplete, unauthenticated settlement excerpts not central to the claims to assess the rights of the State of Florida and obligations of Walgreens.

Each of these missteps constitute reversible error, whether as an abuse of discretion, application of an incorrect legal standard, or use of improper procedure. Consequently, Plaintiff-Appellant Dr. Morgan respectfully requests that this Court reverse the dismissal and denial of leave to amend, and remand for further proceedings on the merits of Dr. Morgan's claims.

Dated: September 26, 2025                    Respectfully submitted,


/s/ Andrew L. Schlafly                       /s/ Erica Chaplin
Andrew L. Schlafly, Esq.                     Erica Chaplin, Esq.
LAW OFFICE OF ANDREW L. SCHLAFLY             ANDERSON & WELCH, LLC
939 Old Chester Road                         500 S. Australian Ave., 6th Flr
Far Hills, NJ 07931                          West Palm Beach, FL 33401
Tel: (908) 719-8608                          Tel: (561) 832-3386
Fax: (908) 934-9207                          Fax: (561) 820-4867
Email: aschlafly@aol.com                     Email: chaplinlaw@gmail.com
                                             andewelch@andersonandwelch.com

*Counsel for Plaintiff-Appellant, Courtney Morgan, M.D.*


## CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements pursuant to Fed. R. App. P. 32(a):

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,568 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

Dated: September 26, 2025

                                             /s/ Andrew L. Schlafly
                                             Andrew L. Schlafly
                                             *Counsel for Plaintiff-Appellant*